STATE OF NORTH DAKOTA, Respondent, v. DETTA NELSON SANDERS and Mildred Nelson Jondahl, Appellants.

(228 N. W. 190.)

Opinion filed December 6, 1929.

*Charles A. Lyche,* for appellants.

*James Morris,* Attorney General, and *Philip R. Bangs,* State's Attorney, for respondent.

BIRDZELL, J.  Detta Nelson Sanders and Mildred Nelson Jondahl were jointly informed against in Grand Forks county, charged with engaging in the liquor traffic contrary to the provisions of chapter 83B of the Penal Code, 1925 Supplement to the Compiled Laws of 1913. They were tried jointly and convicted on separate verdicts.  Each appeals from the judgment of conviction and from the order of the trial court denying her motion for a new trial.  The appeals are presented on one record and may be considered together.  The first specification of error is that the court abused its discretion in denying the application of the defendants to be separately tried.  The record shows that this application was presented to the court in chambers at the opening of the trial.  Though it does not appear what showing was made, we shall assume that every fact later appearing in the trial and having any bearing upon the application was brought to the attention of the court. Under chapter 219, Session Laws of 1927, a request for separate trials of persons jointly charged is addressed to the discretion of the court. In light of the facts appearing on this record, the court clearly did not abuse its discretion.  The defendant Detta Nelson Sanders is the mother of Mildred Nelson Jondahl.  They both lived in the same house at 216 North Seventh street in the city of Grand Forks.  On the 15th day of January, 1929, the house was searched by the sheriff and four deputies.  Intoxicating liquors were found on both the first and second floors of the house.  The house was arranged so that it would accommodate two families, there being a living room, dining room, bedroom and kitchen on the main floor and on the second floor several rooms including a bathroom and a kitchen.  The testimony, however, indicates that there was not a bathroom on the first floor and that in the kitchen on the second floor there were not the usual supplies to indicate that it was being regularly used as a family kitchen.  Intoxicating liquors were found on both floors as well as a large number of surplus empty bottles. It was a simple matter to describe to the jury upon the trial the exact situation as it was presented to the officers who made the search.  The

trial court was careful in instructing the jury to explain that a person would not be guilty of illegally possessing intoxicating liquor found in a house or room which he did not occupy and over which he had no dominion or control, and that it was for them to say from all the evidence whether the defendants occupied the house jointly or whether each had dominion over separate apartments within the house. No evidence was introduced in this case that would not have been competent against one defendant had she been tried separately; that is, all the evidence was equally competent against both defendants whether tried jointly or separately. Therefore, it is difficult to see wherein any prejudice could have resulted from the denial of separate trials.

The next assignment is that the court erred in overruling an objection to the following question: "Mr. Hough, what would you say with respect to this house being a single house or a duplex?" The objection was that no foundation was laid. It had appeared that the witness was a deputy sheriff who had been present and participated in the search made on the 15th of January. It must therefore be assumed that he was familiar with the house both from the exterior and interior. It requires no special qualification to determine whether a house is what might be commonly termed a single house or a duplex.

It is said the court erred in admitting exhibits 4 and 5 over the objection that they were immaterial, incompetent, irrelevant and tended to prejudice the jury. Exhibit 4 consists of a siphon hose and capper. Exhibit 5 was an eight-gallon jar or crock. The evidence otherwise showed that a large number of bottles had been taken by the officers from both the first and second floors and that they had been destroyed. It further showed the presence of a small quantity of what is termed moonshine whiskey and of beer, the whiskey being found on the first floor and the beer on the second floor. We think the presence of the paraphernalia may well be considered as a circumstance tending to establish the guilt of the defendants. It would certainly tend to negative that the presence of the liquor on the premises was due to the intervention of others.

There is clearly no merit in the further contention that the evidence is insufficient to sustain the verdict. It is true that a large quantity of liquor was not found on the premises and it is also true that, in addition to the liquor that was found, there were glasses which bore evidence

of having been recently used. Both the whiskey and the beer were subjected to analyses which showed that they contained a sufficiently high alcoholic content to come within the definition of intoxicating liquors and that there was an absence of elements that would make them unfit for beverage purposes. The evidence is clearly sufficient to support the verdicts.

The judgments and orders appealed from are affirmed.

BURKE, Ch. J., and BURR, CHRISTIANSON, and NUESSLE, JJ., concur.